IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| COVORO MINING SOLUTIONS, LLC<br><br>Plaintiff,<br><br>v.<br><br>WESTLAKE CHEMICALS & VINYLS, LLC,<br><br>Defendant. | Civil Action No. 23-1362-RGA |

MEMORANDUM ORDER

Before me is Defendant's Motion to Dismiss. (D.I. 11). I have considered the parties' briefing.[1] (D.I. 11-1, 29, 33, 47). For the reasons set forth below, this motion is DENIED.

I. BACKGROUND

Plaintiff Covoro Mining Solutions is the owner and operator of a chemical plant. (D.I. 1 ¶ 8). In May 2022, Plaintiff entered discussions with Defendant Westlake Chemicals & Vinyls, a manufacturer and supplier of various chemicals, regarding the purchase of caustic soda. (*Id.* ¶ 9-10). On May 13, 2022, Defendant sent Plaintiff a "non-binding proposal" outline. (*Id.* ¶¶ 11–12). "[T]he parties began negotiating a proposed agreement and exchanging revised drafts" on August 2, 2022. (*Id.* ¶ 13). In January 2023, while the parties were still negotiating the proposed agreement, Plaintiff began purchasing caustic soda from Defendant. (*Id.* ¶ 14). On March 22, 2023, Defendant emailed Plaintiff a proposed final contract ("the Proposed Contract") for signature. (*Id.* ¶¶ 15–16; D.I. 1-1 at 4 of 56). Defendant did not sign the Proposed Contract

---

[1] Defendant's opening brief focused on a now-moot forum-selection issue and only cursorily briefed the dispute resolution issue pertinent to adjudicating this motion. (*See generally* D.I. 11-1). As a result, I allowed Plaintiff to file a sur-reply brief. (D.I. 46; *see* D.I. 47).

1

before sending it to Plaintiff. (D.I. 1 ¶ 17). The Proposed Contract contains an acceptance clause which states:

> 17.0 **Acceptance**: Buyer's acceptance of this Agreement is expressly limited to the terms and conditions contained herein. If Buyer accepts any shipments of Product under this Agreement prior to Seller and Buyer's execution of this Agreement, those shipments shall be governed by the terms and conditions in this Agreement. Except for those prior shipments, this Agreement shall not bind Seller unless and until it is signed by an authorized representative of Seller.

(D.I. 1-1, § 17.0, at 17 of 56). The Proposed Contract includes a dispute resolution clause which requires, as a precondition to instituting any legal action, the negotiation of disputes between the executives of both companies and, if necessary, mediation of the disagreement. (*Id.* § 11.0, at 15–16 of 56).

The parties continued discussing potential revisions up until August 2023. (D.I. 1 ¶¶ 18–23). On August 7, 2023, Plaintiff's president signed and emailed a copy of the unrevised Proposed Contract to Defendant. (*Id.* ¶ 24; D.I. 1-1 at 33 of 56; *Compare* D.I. 1-1 at 5–21 of 56 *with id.* at 27–43 of 56). On August 16, 2023, Plaintiff's and Defendant's representatives met to continue negotiating contract terms "in light of the significant changes in the caustic soda market." (D.I. 1 ¶ 25). The parties exchanged multiple communications in August and September 2023 regarding, among other topics, when Defendant would sign the contract. (*Id.* ¶¶ 26–31). Defendant never signed the Proposed Contract. (*Id.* ¶ 32). On September 21, 2023, Plaintiff emailed Defendant a letter that stated:

> This letter serves as notice to Westlake that Covoro Mining Solutions, LLC (the "Company") hereby rescinds its signature to the Liquid Caustic Soda Sales Agreement (the "Agreement"), dated January 1, 2023. Due to Westlake's failure to sign the Agreement, the Company hereby terminates its offer to enter into the Agreement, effective immediately. Therefore, the proposed Agreement is null and void.

(*Id.* ¶¶ 33–34; D.I. 1-1 at 51-52 of 56).

Defendant sent a letter to Plaintiff on September 29, 2023, claiming that Plaintiff was in breach of the Proposed Contract. (*Id.* ¶ 37).

On October 12, 2023, Plaintiff filed the present action in the Western District of Tennessee, seeking a declaratory judgment that the Proposed Contract is not a binding contract. (D.I. 1). On November 8, 2023, Defendant filed the motion to dismiss that is now before me. (D.I. 11). Defendant simultaneously filed an alternative motion to transfer (D.I. 12), which Plaintiff did not oppose (D.I. 21). The case was subsequently transferred to this Court. (D.I. 24).

## II.   LEGAL STANDARD

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely

consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

## III. DISCUSSION

Defendant contends the Complaint should be dismissed due to Plaintiff's failure to comply with the Proposed Contract's dispute resolution clause.[2] (D.I. 33 at 1). Plaintiff's primary argument in response is that no contract was formed and, therefore, it is not subject to the Proposed Contract's dispute resolution clause. (D.I. 47 at 1).

### A. Jurisdiction

Defendant argues the dispute resolution clause "requires mediation as a 'precondition to instituting any legal action' and encompasses 'any controversy, claim or dispute between the Parties arising out of or relating to [the Proposed Contract] or the breach, termination, or validity thereof.'" (D.I. 33 at 3 (citing D.I. 1-1, § 11.1, at 37 of 56) (cleaned up)). Defendant's position suggests that any dispute related to the Proposed Contract, including those involving contract formation, should be submitted to a mediator for resolution.

The Third Circuit has tackled the question of district court jurisdiction over contract formation disputes in the context of arbitration clauses. *See, e.g., MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefits Funds*, 974 F.3d 386 (3d Cir. 2020). In *MZM*, the court concluded a district court "must resolve [questions about the formation or existence of an arbitration agreement] even when the answer requires passing judgment on the formation or existence of the container contract." *Id.* at 398; *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) ("To satisfy itself that such agreement exists, the court must resolve any issue

---

[2] Defendant's opening brief also sought dismissal for failure to comply with the Proposed Contract's forum-selection clause. (D.I. 11-1 at 1). The case's transfer rendered this issue moot.

4

that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce.").

I am cognizant that these cases largely focus on the requirements of the Federal Arbitration Act. *See MZM*, 974 F.3d at 397–98. The Third Circuit has yet to rule on whether the Federal Arbitration Act governs contracts with mediation clauses, and courts outside this circuit have reached opposing conclusions. *Compare Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1240 (11th Cir. 2008) *with Westcode, Inc. v. Mitsubishi Elec. Corp.*, 2016 WL 3748082, at *2 (N.D.N.Y. July 11, 2016). I believe the statute's applicability ultimately does not matter to the question at hand. Even assuming mediation clauses do not fall under the Federal Arbitration Act, the similar nature of mediation and arbitration clauses, as "private contractual arrangements" for alternative dispute resolution, supports treating the two clauses similarly with regard to contract formation disputes. *MZM*, 974 F.3d at 397. "Simply put, without an agreement to [mediate], there can be no [mediation]." *Id.* This position is consistent with the principle "that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock*, 561 U.S. at 296.

I conclude this Court has jurisdiction to adjudicate the parties' contract formation dispute.

## B. Contract Formation

Defendant argues that an enforceable contract was formed when (1) the parties reached an agreement by email on August 2, 2022, (2) when Plaintiff's president signed the Proposed Contract on August 7, 2023, or when (3) Plaintiff began accepting shipments of caustic soda in January 2023. (D.I. 33 at 3–5).

Under Delaware law, "a valid contract exists when (1) the parties intended that the contract would bind them, (2) the terms of the contract are sufficiently definite, and (3) the

5

parties exchange legal consideration." *Osborn ex rel. Osborn v. Kemp.*, 991 A.2d 1153, 1158 (Del. 2010). "The manifestation of mutual assent to an exchange ordinarily takes the form of an offer or proposal by one party followed by an acceptance by the other party or parties." RESTATEMENT (SECOND) OF CONTRACTS § 22 (Am. L. Inst. 2024). "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Id.* § 24.

"A valid offer contains sufficient finality such that an offeree's acceptance of an offer constitutes the last step in forming a contract." *L-5 Healthcare Partners, LLC v. Alphatec Holdings, Inc.*, 2020 WL 6021536, at *6 (Del. Ch. Oct. 12, 2020) (citing RESTATEMENT (SECOND) OF CONTRACTS § 24 cmt. a ("[T]he key concept involves giving the addressee the apparent power to conclude a contract without further action by the other party.")). "Provisions that allow the proponent of a proposal to unilaterally withdraw it or withhold assent pending approval are typically an indication that a proposal is not an offer." *Id.* (citing E. ALLAN FARNSWORTH & ZACHARY WOLFE, 1 FARNSWORTH ON CONTRACTS § 3.13 at 3-86 (4th ed. 2019) ("[T]he insertion into a proposal of a clause that reserves to its maker the power to close the deal is a compelling indication that the proposal is not an offer. A common example provides that the agreement is not binding until it has been approved at the home office of the maker of the proposal.").

### 1. August 2, 2022 Email Exchange

Defendant maintains the parties reached an agreement by email on August 2, 2022. (D.I. 33 at 3). That is not what the Complaint alleges, however. The Complaint states that August 2 was the beginning of negotiations. (D.I. 1 ¶ 13). It immediately continues, "Although the parties did not reach an agreement, Covoro started purchasing the Product from Westlake in or around

January 2023." (*Id.* ¶ 14). The Complaint indicates negotiations continued up until September 2023. (*See* D.I. 1 ¶¶ 15–23). To support its position that the parties did reach an agreement, Defendant relies on an assertion made by its inhouse counsel in the September 29, 2023 demand letter. (*See* D.I. 33 at 3–4 (citing D.I. 1-1 at 55 of 56)). Viewed "in the light most favorable to the complainant," the factual allegations in the Complaint are that the parties did not form an agreement on August 2, 2022.[3] *Twombly*, 550 U.S. at 558.

### 2. August 7, 2023 Signature

Defendant maintains the parties formed a contract when Plaintiff's president signed the Proposed Contract on August 7, 2023. (D.I. 33 at 4). Plaintiff contends no contract was formed because Defendant never signed the Proposed Contract. (D.I. 47 at 3).

The acceptance clause showcases Defendant's intention not to be bound by the Proposed Contract, except for prior accepted shipments, "unless and until it is signed by an authorized representative of [Defendant]." (D.I. 1-1, § 17.0, at 17 of 56). The contract language, on its face, demonstrates that Defendant did not "assent in advance to the proposed bargain" and, therefore, that its proposal did not constitute a valid offer. *L-5 Healthcare Partners*, 2020 WL 6021536, at *6. The pleadings and the Proposed Contract provide the reasonable inference that the parties did not form a contract on August 7, 2023.

### 3. January 2023 Acceptance of Shipments

Defendant contends that Plaintiff's acceptance of prior shipments subjected Plaintiff to the Proposed Contract's dispute resolution clause. (D.I. 33 at 4–5). Plaintiff agrees that the terms of the Proposed Contract apply with respect to those prior shipments, but maintains that

---

[3] Even assuming an agreement in principle was reached, as discussed further below, the Proposed Contract's acceptance clause displays Defendant's intent not to be bound by the agreement absent sign-off from its authorized representative.

7

they are not enforceable with respect to the future shipments planned for delivery and acceptance after the execution of the Proposed Contract. (D.I. 47 at 3).

As an initial matter, I agree with Plaintiff that the prior shipments are not at issue in the present action. The Complaint seeks a declaratory judgment that "except for the prior shipments . . . the Proposed Agreement is null and void and neither party is bound by its terms." (D.I. 1 ¶ 44). The subject of the instant action is, therefore, the Proposed Contract as it relates to future, post-execution shipments.

The Proposed Contract's acceptance clause states, "If [Plaintiff] accepts any shipments of Product under this Agreement prior to [Defendant's] and [Plaintiff's] execution of this Agreement, those shipments shall be governed by the terms and conditions in this Agreement." (D.I. 1-1, § 17.0, at 17 of 56). The provision continues, "Except for those prior shipments, this Agreement shall not bind [Defendant] unless and until it is signed by an authorized representative of [Defendant]." (*Id.*). A plain reading of the contract language indicates that, for shipments set to be accepted after the Proposed Contract's execution, Defendant did not assent to be bound by the contract absent a signature from Defendant's representative, notwithstanding Plaintiff's acceptance of prior shipments. The pleadings and the Proposed Contract provide the reasonable inference that Plaintiff's acceptance of shipments did not constitute formation of a contract with respect to the post-execution shipments that are the subject of the present action.

For the foregoing reasons, the allegations in Plaintiff's Complaint, considered in connection with the Proposed Contract, show that the Proposed Contract is not a binding contract. I therefore decline to find that Plaintiff was required to comply with the Proposed Contract's dispute resolution clause.

## IV. CONCLUSION

For the above reasons, Defendant's Motion to Dismiss (D.I. 11) is DENIED.

IT IS SO ORDERED.

Entered this 26 day of June, 2024

_____
United States District Judge